## Charleroi Borough School District

*Hugh E. Fergus,* for petitioner.

CARSON, J., March 13, 1947.—The School District of the Borough of Charleroi presented a petition praying for a decree construing section 563 of the School Code with respect to emergencies, particularly requesting authority to permit the school district to use unappropriated revenue to meet the demands of the teachers in the district for an increase in salary. The petition avers, and the testimony proves, that the School District of the Borough of Charleroi has sufficient unappropriated funds available to increase the salaries of its employes for the school year of 1946-47, in the

amount of $200 each, without increasing the indebtedness of the school district. The testimony shows that the school district has, at the present time, the sum of $24,470 available for such purpose. Inasmuch as the school district has 97 professional employes, the school district could use the fund to pay each employe $200 each, as prayed for.

The School District of the Borough of Charleroi, for the school year of 1946-47, adopted a salary schedule and a budget, and fixed the tax mileage. School teachers' salaries vary from a minimum of $1,400 to a maximum of $2,400 for female employes and of $2,550 for men (except vocational teachers who have a maximum of $2,650). In November 1946 the employes made a demand upon petitioner for an increase in their salaries for the school year of 1946-47 of $500 each. The testimony shows that unless arrangements can be made to pay additional salaries, that a number of petitioner's teachers and employes will probably resign and enter the employ of other school districts and employers who will offer compensation in excess of the amount which petitioner can pay under its budget and salary schedule. There is a general shortage of qualified certified teachers in western Pennsylvania, and it will be impossible to replace teachers who would probably resign unless additional salary is received. The compensation already paid during the current school year, together with commitments made for compensation for the balance of the year, will not permit petitioner to grant additional compensation from the funds appropriated in the current budget. The tax collections received have exceeded the annual estimate for the year of 1946-47 and petitioner is in possession of funds not appropriated for any classification, which funds petitioner desires to use to pay its teachers additional compensation; but petitioner has been advised by its solicitor that such funds can be used only in case of emergency; and petitioner, believing that such

an emergency exists, now petitions the court to adjudicate such to be a fact and to authorize such use of its funds.

The provisions of section 563 of the School Code of May 18, 1911, P. L. 309, 24 PS §610, as amended by the Act of May 13, 1937, P. L. 605, relating to the authority of the directors to make additional appropriations or increase existing appropriations, are as follows:

"The board of school directors may, during any fiscal year, make additonal appropriations or increase existing appropriations to meet emergencies, such as epidemics, floods, fire, or other catastrophies, the funds therefor to be provided from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans."

The provisions of section 516 of the School Code of 1911, relating to payments out of school funds, contain the following limitation:

"The use or payment of any public school funds of any school district in this Commonwealth, in any manner or for any purpose not provided in this act, shall be illegal."

Section 2613 of the School Code of 1911, relating to the manner of audit of school finances, imposes the following duty upon the auditors:

"Any school order issued in any other manner or for any other purpose than herein authorized shall, if paid, be disallowed by the auditors, and charged against the person or persons voting for or approving the same, . . ."

The court is convinced that a serious controversy has arisen between the School District of the Borough of Charleroi and its employes, and that it is necessary that this controversy be settled. The school teachers of the school district have formed an organization known as the Teachers Association of Charleroi, of which

every teacher is a member. The association has presented convincingly its request to the school board.

From the testimony presented the court finds:

First. An increase in compensation is necessary to enable the employes to meet the increase which has arisen in the cost of living since the fixing of the budget for the year 1946-47.

Second. That the increase in the cost of living arises from increased cost of shelter, food, clothing and transportation, increased cost of medical and dental care, and so forth.

In the United States of America, 60,000 teaching positions remain unfilled, although 108,000 emergency teachers are employed. Twenty thousand more such emergency teachers are employed now than before V-J Day. There has been a decline in students in teachers' colleges, so that the scarcity of teachers will increase in the future rather than diminish.

Practically every male teacher employe in the School District of Charleroi is now doing supplemental evening, week-end and holiday work in order to make a living. Many of the female teachers are doing the same. In other districts teachers have gone on strike to the great damage of the school organization and the students. No strike threat has been made by the employes of the School District of Charleroi, and the peaceful negotiations which have been thus far carried on between the board of school directors and the teachers association should be considered and such negotiations encouraged. The teachers will not quit voluntarily, but will be compelled to do so and accept other available employment unless some adjustment is made in the compensation paid by the school district. Twenty-six teachers have left the employ of the School District of the Borough of Charleroi during the past five years, at least 10 of whom have received teaching assignments elsewhere at higher salaries.

School teachers' salaries are considerably less than the salaries for comparable jobs with the State and

Federal Governments, with the mercantile establishments, and with local industries. In fact, the testimony shows that the teachers' salaries vary from 33⅓ percent to 100 percent less than salaries paid for comparable positions by other employers. There is testimony that one of the high school teachers, a college graduate, who has been so employed for more than 20 years, has a son who has been employed in industry for two years and now makes one third more pay than his father. The men engaged in the delivery of milk in the same district receive more than twice the monthly compensation paid to school teachers.

The same question has arisen in the courts of Allegheny County in Robinson Township, a district adjacent to Washington County, in In re Robinson Township School District, 58 D. & C. 217, when the board of school directors likewise asked approval of court to a transfer to permit payment of $200 compensation per teacher, the court, speaking through Judge Ellenbogen, said:

"The question which is thus here presented in the petition for declaratory judgment is whether or not the unprecedented economic crisis in the life of the school teachers of Robinson Township constitutes an 'emergency' within the meaning of the Act of Assembly. The term 'emergency' cannot be construed in a vacuum, but must be related to the facts presented. The testimony in this case shows that because of the tremendous rise in prices in the last few months, the teachers of Robinson Township (and elsewhere) have been placed in a position where their present salaries are insufficient to meet even a minimum family budget. If their salaries cannot legally be raised, they will leave their teaching posts for more remunerative employment in such numbers that it will cripple the operations of the schools in Robinson Township. Moreover, the School District will not be able to replace them with suitable substitutes because trained sub-

stitutes are not available at the salary schedules set up in the budget.

"Thus, unless it can raise the salaries of its teachers, the School District of Robinson Township is threatened with an immediate loss of such numbers of its school teachers as to bring about an interruption in the teaching of many classes and required subjects.

"The statute refers to 'emergencies, such as epidemics, floods, fires, or other catastrophies'. The enumeration of physical disasters such as floods and fires, which would impair the usefulness of school buildings, and of epidemics which would endanger the health of the community, was not intended to limit the general term 'emergencies' which precedes them to other physical catastrophies.

"The statute does not limit the school board to emergencies of a 'physical' nature. Had the legislature intended to do so, it could have easily said so. It deliberately inserted the broad term 'emergencies' to provide for any emergency brought about by act of God or man which imperiled the school operations.

"The immediate and actual danger to the operation of a school district posed by the threatened loss of efficient and qualified teaching personnel and the certain inability of replacing such teaching personnel is no less an emergency than a flood which imperils the usefulness of a school building."

"The school budget of Robinson Township was made up, as required by law, in the early spring of 1946. The budget sessions were held in March and April of this year and the budget was finally adopted on May 17, 1946. This was long after the end of the war.

"Up to that time the price level on goods and commodities was rising but was doing so slowly and gradually. There was no indication at that time, and the directors of the Robinson Township School District could not then forsee that the OPA would suddenly be discarded and that the price level on goods and

commodities would be permitted to leap up and reach unprecedented heights. School directors are mere mortals and not supermen and could not forsee in April, 1946, that the price level in December, 1946, would be so far out of reach of all the teachers as to threaten the continuity of school operations."

From the testimony of record in this action, we find an emergency has arisen in the School District of the Borough of Charleroi, which requires the board of school directors to make an additional appropriation for salaries for employes of the school district to be provided from unappropriated revenue within the meaning of section 563 of the School Code of 1911, as amended, 24 PS §610.

## Decree

And now, January 31, 1947, the petition of the School District of the Borough of Charleroi praying for a decree construing the provisions of the School Code with respect to budget and the transfer and proper use of unappropriated funds, having come on for adjudication after a full hearing and argument, in accordance with the foregoing opinion, it is determined that said transfer and increase can be made without increasing the indebtedness of the school district and without violation of the School Code.

It is adjudged and decreed that the School District of the Borough of Charleroi be and is hereby authorized, in accordance with section 563 of the School Code of May 18, 1911, P. L. 309, as amended, 24 PS §610, relating to emergencies, to transfer in its budget the unappropriated revenues in the sum of $24,470, so as to make the same available to increase the salaries of all school employes for the year 1946-47 by the amount of $200 each.

NOTE.—Cf. Ambridge Borough School District, 59 D. & C. 73; Upper Moreland Twp. School District v. School Teachers Assn. of Upper Moreland Twp. et al.; 59 D. & C. 267; Hopewell Township School District, 59 D. & C. 249.